Good morning, and just a report. My name is Robert Seames, and I'm representing the appellants in this case. This case falls for the silence of an error involving missing instructions. I suspect that you are referring to a group with deference to the appellant relating to the subpoena test, which I understand you're sitting in the center seat. I wonder if that's true. Your Honor, I'm actually the appellant talker. And that's discouraged, usually, so I overcompensate. Let me, I'll relax, and I'll start speaking. Okay. The Ninth Circuit law on missionary instructions is that a civil litany has a right to missionary instructions that fairly and adequately cover the issues presented in the correctless state law and are not misleading. Each party is entitled to an instruction about his or her theory of the case. If it is supported by the law, it is the foundation of the evidence. If a district court makes an error when it rejects proposed jury instructions, they are properly supported by the law and the evidence that's from Clem v. O'Malley, the incident in our case. As I first talk, and I'm probably only going to talk about this solution now, this jury below was, over our objection, given instruction 41, and basically repeated to deterring the language of exclusion hammer. The California Court of Appeal, in a case called Lofton v. Zurich, has stated, regarding an exclusion hammer, which is commonly called the impaired property execution, that various commentators or courts have found the impaired property exclusion to be problematic, ambiguous, difficult, uncertain, unintelligible, or too complex to receive a uniform interpretation. That court also noted, this criticism is understandable, and it certainly cannot escape its duty to ensure, by means of an unclear exclusionary clause, and that's 121 Carolina 4th and 1048 note 4. I think that the court should not have given that instruction, because that exclusion has two separate aspects to it. One of those aspects did not apply to the law or the facts of this case, and the other one really didn't apply to the facts either, but was also adequately addressed in other jury interventions. The first part of it is the one that is called the impaired property part, because we now know policy has a definition of impaired property in it, and it's very different from what you and I would think of as impaired property. If you saw a house that had the problems that the Lafitte's house had, you'd say, that's impaired. But it wasn't impaired property as the policy defines that term, because the definition of that term, which is found in the record in 1048, excludes the insurance work and the work of the insurance sole contractors. In the trial, the plaintiffs, the respondents here, called as a witness a felon named Pat Kelly. Pat Kelly had been in the underlying construction defects case. The fiend's expert almost bought the house. And then he says the framing is terrible, and they didn't trace the problems to the framing. He said the framing was terrible. There were specific aspects to the framing that it caused various problems with the house. But what I'm interested in here was that he stated that his entire scope of repair was for work of Mr. Haas or his subcontractors, which was either defective or incomplete. Well, if it's work of the subcontractors or Mr. Haas, it's not impaired property. And the jury didn't even need to hear about impaired property. I understand that, but I've got a different question. It takes me on a slightly different direction. Okay. It strikes me that there was sufficient evidence in the record from which the jury could have concluded that the policy simply didn't cover this because the framing problem exists before the policy is taken out, and the framing can be seen as responsible for all of the problems, including the bad circle. Okay. And even, at least by assumption, that the jury that there's sufficient evidence in the record from which the jury could have concluded that before you get into any of the exclusions, there simply is no coverage. And we have an overall, the jury just checks the box that says not covered under the box. How do I deal with that? Because you can't quite tell whether the jury has decided that because there's no coverage in the first place or because there's an exclusion. Well, anyway, where that belongs in all of this is whether any error in the instructions was harmless or good. And under the Ninth Circuit law, it is the burden of the respondent here to demonstrate that it's more likely than not that the jury would have reached the same conclusion had it been instructed properly. In addressing that, the court's pretty consistent that you can't speculate about what the jury would have concluded. Well, for instance, in the Jess case, in the Jess case, the reason that the jury was harmless was because that case involved whether someone should receive methadone in prison. And there was no evidence that methadone was called for for any of the fellow's medical conditions. So there was no evidence that would have justified a verdict in his favor even if the jury had been instructed properly. In the Jess case, did Judge Demolito find that the prevailing party below met the burden of showing that the error, if any, was harmless? Was that the finding of the trial court when he denied under trial? I don't believe that that was the court's finding, in particular on this exclusion. But the court's finding was that the, what the court said was, well, I don't believe there are authorities there that are specific. They're not binding on exclusion. But let's go back and talk about that. The jury could well have concluded that what the court, what Judge Fletcher was talking about a few minutes ago, was disclosing that deframing all over this house was banned. And it started before the policy period caused a problem with the flooring. And then after the policy period began, the stucco was put on the house. By your subcontractor? By his subcontractor. And the subcontractor did not have a whole harmless agreement, as the policy required, did they? There was no evidence of that in the record. The problem is that the way that this jury was instructed, and this was correct, was that looking at that policy provision, the contractor's condition endorsement, it was applied on a defect-by-defect basis. And the court ruled correctly that the endorsement did not apply to obscure limiting coverage for defects caused by Mr. Haas or his employees, which included when they nailed the OSB siding onto the studs, they put it too close together. So when it heated up, it expanded and it popped with stucco, it made the stucco crack. That was a construction defect. They deemed it to be a separate occurrence that did not cause property damage until after the policy period began, because the stucco was even put on there until after the policy period began. The jury was never instructed that if the work was done before the policy period and it later, during the policy period, caused damage, that that was not covered. The focus was when did the property damage happen. And if this property damage, the stucco, was damaged during the policy period, the only way that you get it back before the policy period is under this which required that the jury conclude that all of the mistakes, different mistakes that were made in the framing were only one occurrence. And if the court looks at the construction on the number of occurrences that's in construction 32 and 50-09, it's very possible that the jury could have concluded that the OSB problem that caused stucco to crack was a different occurrence from the foundation problem that, before the policy period, had caused the floristical bubble. And therefore, you have property damage that first happened during the policy period. It's not excluded by any of the exclusions. It's caused by a defect in the work of the general contractor who is not covered by the contractor's special condition endorsement. It doesn't exclude coverage for his negligence. And therefore, it matters the jury was not properly instructed on exclusion element. And so do we even have to decide the issue of the jury instructions if we were to fail to fulfill a condition precedent, namely the subcontractor endorsements? No. And that's because that endorsement does not apply to the work of HUCS. If we disagree with you on that. If you disagree with me on that, then I've got a real problem. However, that is the way that the California court, in the underwriters versus co-builders, has construed this endorsement against co-builders. Your argument is that this endorsement didn't apply because? It does not apply to the work of the general contractor, whose needs surrender to the policy period. That doesn't make sense to me because the goal would be to have the general contractor get the endorsements from the subcontractors to take care of any liability on the part of the subcontractors. So I don't understand why the general contractor wouldn't be held to that obligation. It's because it's supposed to be there to deal with the problems that the subcontractors cause. But why wouldn't it be the obligation of the general contractor to make sure that the subcontractors have the insurance? But it's not a conditional insurance for his profit and advantages. Absolutely. That's the finding of the court in California and the district court in Colorado. But how do you sort out whether it was the negligence of the contractor or the subcontractor? I mean, why don't you have the endorsement pending sorting out who was actually responsible? There was evidence in the record that described the fault of the general contractor that caused the subnote to break. You don't know that when you're doing the contract. You don't know who's going to be managing it. I don't know if it's going to be the subcontractor or if it's going to be the general contractor. So why isn't this provision enforceable at the time of the contract? It's enforceable, but it's not enforceable to eliminate coverage for this general contractor who is the policyholder. The policyholder general contractors were. Now, what case did you say in California's support document? I used the underwriters versus co-workers case. Subject of course, version 12-K-T, minor, I think, or minor. Subject. I never reviewed it. I think that's what you did there. Yeah, I want to reserve the rest of my time. Okay. Well, why do you reserve half the time after you answer this question? Well, actually, it won't even have to be a response. I already said that. There's something puzzling about this case to me procedurally. The judge is bifurcating it. The judge is going to get to the second question later, which seems to me should be in the first question, which is to say that the misrepresentations in getting the policy, meaning the policy is void, because the policy is void because the misrepresentations. I was sort of lost in getting the policy in the first place. Why are we doing it this way? Exactly. Thank you. We litigated that back and forth, and the conclusion that was reached is that while there's no right to a jury trial on the misrepresentation issues and whether the policy is enforceable, because there is a right to a jury trial on a bunch of other issues in the case, and there was a perception that there was enough of a swap over between the two, that it would be best to protect the thrill-builders' interests in the right to jury trial, to have the jury trial decide factual issues first. So I get that, and so I assume for the moment that that's the right decision? I disagree with you. I ask the jury for the purpose of the question. I'm now about to ask if that's the right decision or a potential position. Why in the world are you appealing now? Why is this not a forbidden interrogatory appeal without a final judgment? There is a final judgment. I understand that, but why is this open? Why should we allow that? I mean, not only did Judge Davila bifurcate the case, he bifurcated it for purposes of appeal. I don't want to be hearing this appeal, but I think there's a very good chance the whole thing is going to go out the window. Well, I think that that's a really interesting question that I have not really thought about very much. It took a couple of years. And I think that the practical result is that if this Court just reversed the biases, this Court's opinion could well inform clue builders about what its next step would be. Okay, why don't we hear the other side? And I'll give you a chance to respond. I appreciate that. Thank you. Good morning. May it please the Court. I'm Petter Patwal, and I represent probe builders in this appeal. Most of the questions we've had so far have focused on what I would call heartless error arguments,  jury. There was very strong evidence that they couldn't have made any difference to the final outcome. Judge Fletcher, you asked about the deeming clause of the policy, and Judge Rollins and Judge Pryor, you also asked, well, if there could be a contract or a special condition endorsement. And I think those are appropriate ways to resolve this appeal. Not of the age and caste, but of the methodologies engaging it with respect to exclusions are necessary to resolve the case. It's obvious that the jurors don't look over it for any of those two reasons. Why didn't we have interrogatories for the jury to do this? That wasn't a general verdict. It wasn't a general verdict, either. So why weren't there special interrogatories to tell us why they decided what they decided? Well, Your Honor, the judge elected not to give those interrogatories. There should be no claim of error on the part of the hospital appeals that the verdict form was miscast. In fact, this was a consent verdict form. All parties agreed to it. So we can't attribute any error or forceful error to that fact. What we do know is, through the judge's lecture, your question suggested reframing here, which is the skeleton of the house, was deeply flawed. Expert witnesses said it was the worst job he'd ever seen, and that that was the trigger. In fact, that was the occurrence in which all of the cascading stories and problems of the house flowed. And as a consequence of that, it resounded before the policy period, in fact, under the Deeming Clause, an interstitial conference, creating the damage that all of them still ask for. Alternatively, in the evidence, the court is, in fact, assuring that the reason the stucco went bad was because the underlying, uh, whatever they call it, there's sometimes a word for it, was placed too close. And because it was placed too close, it swelled in a way that caused the stucco to crash, to crack. And it had nothing to do with the framing. Your Honor, I don't think I was talking so much before that conclusion. There was some testimony about that, Your Honor, but I would direct you to what expert witness Kelly said. This is in the supplemental excerpts for record of page 132. He said, no matter how good or bad the stucco application was, there were going to be cracks and problems because the framing was so bad. In other words, the way that the stucco was applied was so thick and relevant because once that bad stucco, the quality of the frame was still cutting into the fine. But, uh, maybe that or the, the, the, the, the evidence they just gave you was not application of the stucco that caused the problem. It was application. It was the placing of, That's right. Obviously, his claims against stakeholders to the Philippines have been seen in record as one of the most inhumane acts of aggression. There was indeed a harmless error. I think that's the best reading of what the district judge found in that post-trial order, and we certainly agree with that. The one point I want to make about the exclusions in a general way, there are a lot of insurance policies out there, and what ProBuilders proposed was the general liability policy. That doesn't cover faulty mortgage. There are other insurance products whose purpose is to provide coverage for faulty mortgage. Performance bonds, builder's risk policies, there are other products out there. The function of a general liability policy, however, like ProBuilders offered, is to exclude all of the legal gymnastics involved with exclusion M and J5 in their effort to extort into a policy that was never intended to cover faulty mortgage. A claim by the audience for faulty mortgage is just a big sentence. The rubric about the CGO is not a performance bond. That's a play. The court certifies it for a partial judgment under Bill 54P may be required for matching words, which is no just reason for play. Under this court's pragmatic approach the court has the opportunity to review that decision, but there's a deferential review about whether it makes sense to sever, and there are practical considerations involved in taking the offer. So we ask the court to affirm the judgment of the district court. I believe three points that I'd like to make. The first point is that Judge Davlin, as far as I can tell, did not refer   policy period. As a matter of fact, I have searched the opinion of the court as you hear it. The second point I'd like to make is there's been this reference to, well, the framing happened before  policy period. And the fact that the jury was properly instructed that merely defective work was not property damage, that is, destruction of the original painting. So it is not an answer to this    question. Thank you.
judges: W. Fletcher, Rawlinson, Pratt